IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY,<br><br>           Plaintiff,<br><br>  v.<br><br>DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>           Defendant.<br>_____ / | No. C 08-03079 WHA<br><br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this dispute between insurance companies, both sides have filed cross-motions for summary judgment. For the foregoing reasons, defendant's motion is **GRANTED** and plaintiff's motion is **DENIED**.

**STATEMENT**

Plaintiff Fireman's Fund Insurance Company, an insurer of a shopping mall owner, brought this action against defendant Discover Property & Casualty Insurance Company, an insurer of a former mall tenant, to obtain contribution and indemnification for an underlying personal injury action. The parties have stipulated to the following facts for purposes of the cross-motions for summary judgment.

**1.     THE AGREEMENTS.**

The incident that is the subject of the underlying personal injury action occurred near the Baldwin Hills Shopping Mall in Los Angeles, California. The outdoor strip mall is owned by Baldwin Hills Investors, Ltd. On October 1, 2001, Eso Won Book, Inc. ("Esowon") entered into a five-year shopping center lease for retail space from Baldwin Hills for a bookstore. The lease defined the "leased premises" as follows (Exh. A at 1):

> The demised premises have an agreed floor area of 3,250 square feet. It is expressly understood that the demised premises do not include the roof or exterior face of the walls (except store fronts) and the use of the foregoing is expressly reserved to the Landlord.

The lease required that Esowon maintain the leased premises and all appurtenances at its "own cost and expense" (*id.* at 3). Pursuant to the lease, Baldwin Hills was required to maintain the areas exterior to the leased premises, including the "common areas" of the mall, such as the "parking areas, sidewalks . . . curbs, truckways, delivery passages . . . private streets and alleys . . . and the like," "unless maintenance and repairs are caused in part or in whole by the act, neglect, fault or ommision [sic] of any duty by [Esowon]" (*ibid.*).

The lease also required that Esowon carry insurance to insure Baldwin Hills "against any liability arising out of [Esowon's] ownership, use, occupancy, or maintenance of the demised premises and all areas appurtenant thereto" (*ibid.*). The lease included the following hold harmless and indemnity provision (*id.* at 4):

> **HOLD HARMLESS AND INDEMNITY**: Tenant shall hold Landlord harmless and indemnified at all times against any claims, loss, damage, cost or expense, including reasonable attorney's fees, by reason of Tenant's failure to perform any obligation to be performed by Tenant under the terms of this Lease or from Tenant's use of the demised premises or from any activity, work or things done or permitted by Tenant, its contractors, agents, employees, licensees or invitees in or about the demised premises or elsewhere. Tenant covenants and agrees that in case Landlord shall without fault on its part be made a party to any litigation commenced by or against Tenant, then Tenant shall and will pay all costs and expenses, including attorney's fees, which may be incurred by Landlord in enforcing any of the covenants and agreements of this Lease, and all such costs, expenses and attorney's fees shall, if paid by Landlord herein, be so much additional rent due on the next rent date after such payment or payments.

2

To comply with the lease, Esowon obtained an additional insured endorsement from defendant Discover and added Baldwin Hills as the additional insured on its commercial general liability policy. The additional insured endorsement stated, in pertinent part, the following regarding coverage for Baldwin Hills (Exh. B at 1) (emphasis added):

> A.   . . . **Who is An Insured** in **Section II — Liability:**
>
> > 4.   The person or organization shown in the Schedule [Baldwin Hills] is also an insured, but only with respect to liability *arising out of the ownership, maintenance or use* of that part of the premises leased to you [Esowon] and shown in the Schedule.
>
> B.   The following exclusions are added to **Section II — Liability:**
>
> This insurance does not apply to:
>
> > \*          \*          \*
> >
> > 2.   Structural alterations, new construction or demolition operations performed by or for the person or organization designated in the Schedule.

### 2. THE UNDERLYING PERSONAL INJURY ACTION.

For 10:00 a.m. on June 26, 2006, Esowon scheduled a book signing by former President Bill Clinton. Margaret Melhado claimed that near midnight on the night before, she arrived at the leased premises to attend the book signing. She waited across the street (La Brea Avenue) from the bookstore until shortly before 6:00 a.m. on the following day, when she moved her car and parked on Coliseum Street, just east of La Brea Avenue. She exited her car, crossed Coliseum Street and walked on the public sidewalk eastward along Coliseum Street, which borders one edge of the mall. Construction was underway on the part of the mall that bordered Coliseum Street. This had nothing to do with the bookstore. A temporary fence was placed around the construction. Unfortunately, a bracket or "fence footing" that supported the temporary fence encroached on the public sidewalk. Melhado tripped and fell over the part of the fence footing that was jutting out onto the sidewalk. When she fell, Melhado was approximately 844 feet away from the bookstore's leased premises. There were no other people standing between the corner where she first stepped onto the sidewalk and the location where she fell. At the time she fell, she was not waiting in line for the book signing. Nor was she

3

anywhere close to the line. After falling, Melhado was taken home by a family member. Melhado later had three surgeries for multiple joint replacement related to her injury.

Melhado brought a personal injury lawsuit in state court against National Construction Rentals, Inc; Rent-A-Fence, Inc.; The National Business Group, Inc.; Grubb & Ellis Company; and Grubb & Ellis Management Services, Inc. In her complaint, Melhado alleged that she was en route to the bookstore to attend former President Clinton's book signing when she made contact with a temporary fence system negligently set up by National Rent-A-Fence and other companies connected with the construction project. National Construction Rentals filed a cross-complaint adding Esowon and Baldwin Hills as cross-defendants. In the state court action, the fencing company's safety manager admitted that the temporary fence footing should have been painted with red or orange safety paint and it should not have extended onto the public sidewalk.     In the state court action, Discover retained a firm to defend Esowon. Melhado settled with Esowon and dismissed the claims against it for a mutual waiver of costs. The settlement was approved by the state court despite the objection of Baldwin Hills. Melhado later settled with the remaining defendants, including Baldwin Hills, for $700,000. Under the terms of a general liability insurance policy, Fireman's Fund defended and indemnified Baldwin Hills in the *Melhado* action. Fireman's Fund also indemnified National Construction Rentals, Inc. dba National Rent-A-Fence (the construction company that erected the fence) under the insurance policy, because a purchase order between National Construction Rentals and Baldwin Hills contained a hold harmless clause requiring them to do so.

Fireman's Fund then brought this action against Discover, seeking contribution and indemnification on the ground that Baldwin Hills was an additional insured entitled to coverage under the policy Discover issued to Esowon.

**ANALYSIS**

Summary judgment is granted under FRCP 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A district court must determine, viewing the evidence in the light most favorable to the nonmoving party,

4

whether there is any genuine issue of material fact. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).[1]

### 1. THE LEASE BETWEEN BALDWIN HILLS AND ESOWON.

Fireman's Fund seeks contribution and indemnification from Discover for an underlying personal injury action. Citing to the hold harmless provision in the lease between Baldwin Hills and Esowon, Discover argues that the lease does not obligate Esowon to indemnify Baldwin Hills for Melhado's injuries. In its opposition, Fireman's Fund clarifies that its argument is *not* based on the hold harmless provision in the lease (Opp. 1–2). Rather, its claim for indemnity is anchored in the language of the Discover policy. This order, therefore, will focus only on the additional insured endorsement.

### 2. THE ADDITIONAL INSURED ENDORSEMENT.

The only issue is whether Baldwin Hills is covered by the additional insured endorsement obtained by Discover's named insured, Esowon. The endorsement named Baldwin Hills as an additional insured "but only with respect to liability *arising out of the ownership, maintenance or use* of that part of the premises leased to" Esowon (Exh. B at 1) (emphasis added). "California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. . . . [I]t broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal. App. 4th 321, 328 (1999). "Although the phrase  'arising out of' should be broadly read to require only a minimal causal connection, it requires more than 'but for' causation." *See Transcontinental Ins. Co. v. Ins. Co. of the State of Pennsylvania*, 148 Cal. App. 4th 1296, 1308 (2007); *see also Syufy*, 69 Cal. App. 4th at 329 (discussing decisions that describe the "arising

---

[1] Unless otherwise indicated, internal citations and quotations are omitted from quotes.

5

1  out of" standard as an intermediate level of causation between "but for" and proximate
2  causation).

3      Discover argues that Baldwin Hills' liability did not arise out of Esowon's ownership,
4  maintenance, or use of the leased premises and instead it arose from the construction company's
5  negligence and the indemnity agreement between Baldwin Hills' and the construction company.
6  Discover further argues there was no causal connection or incidental relationship between
7  Baldwin Hill's liability and the cause or location of Melhado's fall.  On the other hand,
8  Fireman's Fund primarily contends that coverage extends to Baldwin Hills because the injury
9  arose out of Esowon's "use" of the leased premises as Melhado was en route to the bookstore
10 when she fell.

11     This order holds that, because there was neither a causal connection nor incidental
12 relationship, Melhado's injury did not "arise out of" Esowon's "ownership, maintenance or use"
13 of the leased premises.  According to Melhado, she arrived near the leased premises at
14 11:30 p.m. to attend a book signing the next day, and she waited in her car across the street
15 from the bookstore until the following morning, when she moved her car to another street at the
16 end of the mall.  While walking on the public sidewalk to the bookstore, she fell over the fence
17 footing that supported the temporary fence placed around construction outside the mall.  The
18 bookstore, however, was not instrumental in any of the acts that led to the injury.  In fact, the
19 following is undisputed: "Esowon had no control over, or any connection, with the construction
20 project at the Mall or the temporary fencing utilized by National Construction Rentals.  Esowon
21 had no control over the maintenance of the public sidewalk where Melhado fell.  Esowon did
22 not have any control over the route or mode of transportation Melhado chose to take to travel to
23 the bookstore" (SSF ¶ 15).  The construction, temporary fencing, and resulting injury had
24 *nothing* to do with the bookstore's use of the leased premises, but rather resulted entirely from
25 construction activities in which the mall was separately and independently engaged.  The sole
26 cause of the incident was the mall and the construction company, not the bookstore.

27     The required causal connection between the use of the leased premises and the tortious
28 activity causing the injury is lacking.  The *only* connection between the incident giving rise to

6

1 liability (*i.e.*, the temporary fencing on the construction site and resulting fall) and the bookstore
2 was the fact that Melhado happened to be walking to the bookstore.  So, but for the book
3 signing event, Melhado would not have been present and injured.  Mere "but for" causation is
4 not enough.  The connection here is too thin to support a finding of coverage under the
5 endorsement at issue based on Esowon's use of the leased premises for the book signing event.
6 *See, e.g., St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.*, 101 Cal.
7 App. 4th 1038 (2002) (finding no coverage for the additional insured when the only connection
8 between the injury causing incident — a pipe explosion — and the named insurer was the fact
9 that the injured person was present because he happened to be employed by the named insurer).

10 In the present action, the lease only required the bookstore to provide liability coverage
11 for the mall with respect to claims arising out of the ownership, maintenance or use of the
12 *leased premises and all areas appurtenant thereto*.  Likewise, the additional insured
13 endorsement only covered liability arising out of the ownership, maintenance or use of the
14 *leased premises*.  The injury did not even occur on or close to the leased premises.  Rather, it
15 occurred in a remote location.  According to the lease, the leased premises only included "an
16 agreed floor area of 3,250 square feet" (Exh. A at 1).  At the time of the fall, Melhado was not
17 in the bookstore or in line for the book signing.  She was walking on a public sidewalk near the
18 mall's construction site.  In fact, when Melhado fell, she was down the street and approximately
19 *844 feet away* from the bookstore.  That is more than the length of two footballs fields (two and
20 a third to be exact).  The remoteness of the incident further establishes that there was no causal
21 connection or relationship.  *See, e.g., Hartford v. State of California* , 41 Cal. App. 4th 1564
22 (1996) (finding no duty to defend where insured had coverage for use of a booth at a state fair
23 and the injury occurred in an area and on a structure remote from the rented booth and had no
24 relationship to the insured's operations).

25 Fireman's Fund contends that the controlling decision is *Vitton Construction Co., Inc. v.*
26 *Pacific Ins. Co.*, 110 Cal. App. 4th 762, 764 (2003).  That decision is distinguishable.  In *Vitton*,
27 pursuant to a subcontract with a general contractor, the subcontractor created holes in the roof
28 of a warehouse and left the holes uncovered.  After the subcontractor completed its work, a

7

1  roofer for another subcontractor accidently fell through one of the holes while working on the
2  roof. The parties settled the action the roofer brought against them. The general contractor
3  argued it was covered under the additional insured endorsement of the policy issued to the
4  subcontractor, which covered an additional insured "with respect to liability arising out of . . .
5  [the subcontractor's] work for that additional insured." *Ibid.* The court concluded there was a
6  sufficient "minimal causal connection" between the subcontractor's work and the situation
7  giving rise to liability to trigger coverage for the general contractor as an additional insured.
8  The subcontractor's work — cutting holes in the roof — created the dangerous condition that
9  led to the fall and resulting injury. *Id.* at 767. In sharp contrast, here, the bookstore owner did
10 not create the dangerous condition, namely the fencing jutting out, that led to Melhado's fall
11 and injury. Rather, the mall and the construction company created the dangerous condition.

12  There must be a minimal causal connection or incidental relationship beyond but for
13 causation. A sidewalk trip-and-fall victim may have in mind possibly visiting several stores or
14 possibly merely window shopping or possibly a combination of stores and non-mall stores. The
15 ephemeral intentions of sidewalk shoppers are too sketchy to serve as a reliable guide. Yes,
16 here the victim's intentions were clear. But in the run of cases, they would be vague. Allowing
17 coverage here would invite interminable and inconclusive litigation with the prospect that all or
18 many tenants would be sued for contribution by mall owners on the theory that a victim was
19 attracted to the mall, in part, by the tenant's store. While 'arise out of' is to be broadly
20 interpreted, construing the policy coverage to extend to the dangerous condition created here by
21 the mall and construction company and to apply it to any member of the public injured while
22 heading to a store in the mall "would in effect render nugatory the language specifically limiting
23 coverage to injury arising out of the 'ownership, maintenance, or use' of the property. . . . Such
24 expansive coverage would not . . . comport with an insured's objectively reasonable
25 expectations." *See Kramer v. State Farm Fire & Casualty Co.*, 76 Cal. App. 4th 332, 340

8

(1999). In sum, the undisputed facts do not satisfy the standard required to trigger coverage under the additional insured endorsement at issue here.[2]

## CONCLUSION

Defendant Discover, the bookstore's insurer, did not have a duty under the additional insured endorsement to contribute or indemnify defendant Fireman's Fund, the mall's insurer, for the underlying personal injury action. For the foregoing reasons, defendant's motion is **GRANTED** and plaintiff's motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 21, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[2] Discover also presents arguments regarding its notice and excess coverage defenses. Because this order finds there is no coverage, these additional arguments need not be addressed.